## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRAY JIBRIL MURRAY, | : | Civil No. 1:21-cv-320 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| COLLEEN MCCOY, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff Bray Jabril Murray ("Murray"), an inmate in state custody, commenced this *pro se* civil action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Named as Defendants are Correctional Officer Colleen McCoy, Hearing Examiner Charlie J. McKeown, Sergeant Gilroy, Captain Lukashenski, Superintendent Kevin Ransom, Major Jasen Bohinski, Correctional Officer Cooper, Program Manager Michael Goyne, and Sergeant Robert McCoy.  Presently ripe for disposition is Defendants' motion (Doc. 48) for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons set forth below, the Court will grant the motion.

I.      **Statement of Undisputed Facts[1]**

In the complaint, Murray alleges that Defendants retaliated against him for filing civil lawsuits and inmate grievances.  (Doc. 1).  He alleges that a fabricated misconduct was issued against him, which resulted in his placement in disciplinary custody and loss of his prison job.  (*Id.* ¶ 2).  Murray further asserts that his legal property was destroyed, he incurred high shipping costs, and he was transferred to a correctional facility four hours from his home.  (*Id.* ¶ 2)

Murray was transferred to the State Correctional Institution, Dallas, Pennsylvania ("SCI-Dallas") on August 30, 2016.  (Doc. 39 ¶ 1; Doc. 59 ¶ 1).  On June 14, 2017, he was placed on I-Block at SCI-Dallas.  (*Id.* ¶ 2).

Murray previously filed two other civil lawsuits in the United States District Court for the Middle District of Pennsylvania: 1:17-CV-127, initiated on July 17, 2017, and 1:17-CV-1637, initiated on September 12, 2017.  (*Id.* ¶¶ 3, 4).  He also filed a civil lawsuit in the Luzerne County Court of Common Pleas that was transferred to the Pennsylvania Commonwealth Court at docket number 542 MD 2017.  (*Id.* ¶ 5).

On June 28, 2019, Murray filed inmate grievance number 809441 against Colleen McCoy.  (*Id.* ¶ 6).  On July 14, 2019, he filed inmate grievance number 811782 against

---

[1]      Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  Unless otherwise noted, the factual background herein derives from the parties' statements of material facts.  (Docs. 49, 59).

Colleen McCoy.  (*Id.* ¶ 7).  On July 15, 2019, Murray filed inmate grievance number 812432 against Colleen McCoy, Gilroy, and Cooper.  (*Id.* ¶ 8).

Murray claims that Cooper filed misconduct number B274397 against him on August 7, 2019.  (*Id.* ¶ 9).  He claims that Colleen McCoy filed misconduct D123755 against him on August 8, 2019.  (*Id.* ¶ 10).

On August 20, 2019, Murray filed inmate grievance number 819774 against Colleen McCoy.  (*Id.* ¶ 11).  Murray claims that Colleen McCoy filed misconduct B972392 against him on August 30, 2019.  (*Id.* ¶ 12).  Murray claims that Cooper filed misconduct B972392 against him on August 30, 2019.  (*Id.* ¶ 13).

On September 3, 2019, Murray filed inmate grievance number 821833 against Gilroy and Lukashenski.  (*Id.* ¶ 14).  Murray filed inmate grievance number 827627 against Gilroy and Lukashenski on September 3, 2019.  (*Id.* ¶ 15).  On September 4, 2019, Murray filed inmate grievance number 821799 against Colleen McCoy, Lukashenski, and Gilroy.  (*Id.* ¶ 16).  Murray claims that Colleen McCoy filed inmate misconduct D123772 against him on September 4, 2019.  (*Id.* ¶ 17).

On September 16, 2019, Murray filed inmate grievance number 824076 against Colleen McCoy and Cooper.  (*Id.* ¶ 18).  Murray claims that he filed inmate grievance number 972392 against Cooper on September 16, 2019.  (*Id.* ¶ 19).

Colleen McCoy filed misconduct number D246269 against Murray on March 21, 2020.  (*Id.* ¶ 20).  McKeown, as hearing examiner, initially held a disciplinary hearing for

misconduct number D246269 on March 24, 2020.  (*Id.* ¶ 21).  McKeown delayed the

hearing to due Murray's request for inmate witnesses.  (Doc. 49 ¶ 22).  Defendants contend

that the two inmate witnesses requested by Murray were scheduled to attend a hearing

twice but were unable to because of health concerns related to the COVID-19 statewide

lockdown.  (*Id.* ¶ 23).  Defendants maintain that there was a health concern because the

inmate witnesses were housed in general population and Murray was housed in the

Restricted Housing Unit ("RHU"), at height of the COVID-19 statewide lockdown wherein

inmate movement was extremely limited to control the spread of the disease.  (*Id.* ¶ 24).

Defendants state that, due to these high health and safety concerns, McKeown interviewed

the inmate witnesses in camera on April 1, 2020.  (*Id.* ¶ 25).  They further assert that

McKeown considered the witnesses' testimony in his review of inmate misconduct

D246269.  (*Id.* ¶ 26).  Murray asserts that McKeown requested that he sign a waiver

regarding holding a hearing within seven days, because the witnesses could not testify in

the RHU.  (Doc. 59 ¶ 22).

On July 21, 2020, Murray was transferred from SCI-Dallas to the State Correctional

Institution, Pine Grove, Pennsylvania ("SCI-Pine Grove").  (Doc. 49 ¶ 27; Doc. 59 ¶ 27).

Murray's claims against Ransom are based on his alleged acts as a conspirator and

his responses, or failure to respond, to grievances and requests to staff.  (*Id.* ¶ 28).

Murray's claims against Bohinski are based on his alleged acts as a conspirator and review

of grievances.  (*Id.* ¶ 29).  Murray did not talk to Bohinski in June 2019, July 2019, August

4

2019, or September 2019. (*Id.* ¶ 30). Murray did not speak with Goyne about Colleen McCoy in 2019. (*Id.* ¶ 31).

Murray claims that Colleen McCoy denied him access to the law library on a single occasion, in August 2019. (*Id.* ¶ 32). He claims his legal paperwork related to his Commonwealth Court case was stolen or destroyed. (*Id.* ¶ 33).

Murray's footlocker was not secured or locked up on March 21, 2020 when he went to the Restricted Housing Unit. (*Id.* ¶ 34). Murray did not see Sergeant Robert McCoy destroy his legal paperwork. (*Id.* ¶ 35).

The Pennsylvania Board of Pardons is a separate state agency than the Department of Corrections. (*Id.* ¶ 36).

Murray appealed only eleven inmate grievances to the Secretary's Office of Inmate Grievance Appeals ("SOIGA") between February 2019 and February 2021. (*Id.* ¶ 37). Of those eleven grievances appealed to SOIGA between February 2019 and February 2021, none were related to First Amendment retaliation or Fourteenth Amendment due process claims. (*Id.* ¶ 38). Rather, these eleven grievances related to cigarette smoke, actions by the Imam, receipt of mail, access to LexisNexis, and air conditioning. (*Id.* ¶ 39).

## II.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

6

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Discussion

### A.   Exhaustion of Administrative Review

Defendants first argue that Murray failed to properly exhaust the following claims, as required by the Prison Litigation Reform Act of 1996 (the "PLRA") before initiating this lawsuit: his claim for monetary damages, his claim regarding denial of special diet meals and the law library, and his retaliation, due process, conspiracy, and misconduct claims. (Doc. 50, pp. 15-18).

The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the

7

power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Accordingly, a prisoner who fails to request monetary damages in the grievance process is barred from bringing a claim for monetary relief in federal court. *See Cunningham v. Zubsic*, 2019 WL 134209, at *5 (W.D. Pa. Jan. 8, 2019); *Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018). To "complete the administrative review process," means "substantial" compliance with the prison's grievance procedures. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004) (citing *Nyhuis*, 204 F.3d at 77-78).

While "[t]he PLRA requires that prisoners comply with the procedural demands of a system created by their jailors", those jailors must also "comply with the demands of the system they created." *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019). Consequently, "[a]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Id.*

Within the Pennsylvania Department of Corrections' ("DOC") system, various

administrative policies exist which allow inmates to challenge aspects of their confinement.

Those policies include: (1) the Inmate Grievance Policy, DC-ADM 804; (2) the Inmate

Discipline Policy, DC-ADM 801; and (3) the Administrative Custody policy, DC-ADM 802.

*See* PA. DEP'T OF CORR., Nos. DC-ADM 801, 802, 804, available at

http://www/cor.state.pa.us (last accessed February 27, 2023).  DC-ADM 804 covers general

grievances, DC-ADM 801 covers inmate discipline, including the assessment of costs for

medical care and losses caused by inmate misconduct, and DC-ADM 802 covers

administrative-custody procedures.  *Id.*  Only DC-ADM 804 and 801 are implicated in this

case.

DC-ADM 804 permits any inmate to seek review of problems that may arise during

the course of confinement.  *See* 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM

804, available at http://www/cor.state.pa.us (last accessed February 27, 2023).  After an

attempt to resolve any problems informally, an inmate may submit a written grievance to the

Facility's Grievance Coordinator for initial review.  This must occur within fifteen days after

the events upon which the claims are based.  Within fifteen days of an adverse decision by

the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the

institution.  Thereafter, within fifteen days of an adverse decision by the Facility Manager, an

inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals.

An appeal to final review cannot be completed unless an inmate complies with all

9

established procedures.  An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue.  *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

DC-ADM 801 provides three levels of possible review.  After a finding of guilty, the inmate has fifteen days to submit a written appeal to the Program Review Committee ("PRC").  *See* PA. DEP'T OF CORR., No. DC-ADM 801, Inmate Discipline § 4(A)(4), available at http://www/cor.state.pa.us (last accessed February 27, 2023).  There are only three valid bases for an appeal: (1) that the procedures employed were contrary to law or DOC directives or regulations; (2) that the punishment is disproportionate to the offense; or (3) that the findings of fact were insufficient to support the decision.  DC-ADM 801 § 5(A)(1).  Inmates are not allowed to appeal findings of not guilty, and if they pled guilty then they may appeal only on the first two grounds.  DC-ADM 801 § 5(A)(2).  After the PRC issues its decision, the inmate then has seven days to appeal to the Facility Manager.  DC-ADM 801 § 5(B)(1).  Once the Facility Manager makes his or her decision, the inmate then has seven days to appeal to the DOC Chief Hearing Examiner's Office, Office of Chief Counsel, which provides the final level of review.  DC-ADM 801 § 5(C)(3).

The undisputed evidence demonstrates that, between February 2019 and February 2021, Murray appealed eleven grievances to the Secretary's Office of Inmate Grievance Appeals.  (Docs. 49-18 through 49-27).  Rather than provide any evidence that he properly

exhausted administrative remedies, Murray argues that the administrative remedy process was rendered unavailable to him because officials at SCI-Dallas failed to timely respond to his grievances.  (Doc. 58, pp. 14-16).  He argues that he attempted to exhaust his grievances and misconduct appeals through DC-ADM 804 and 801, but to no avail.  (*Id.*).

Of the eleven grievances appealed to the SOIGA, only two appear to be related to the present claims.  On or about March 1, 2019, Murray submitted grievance number 789896, wherein he states that he submitted inmate request slips, but did not receive any responses.  (Doc. 49-21, p. 8).  On September 5, 2019, Murray submitted grievance number 822547, wherein he alleges that security and mailroom staff at SCI-Dallas retaliated against him by destroying his mail.  (Doc. 49-25, pp. 3, 7).  Murray did not seek monetary relief[2] in either grievance.  Additionally, these grievances do not contain any claims regarding the denial of special diet meals, denial of access to the law library, or due process and conspiracy claims.  However, in grievance number 789896, Murray expressed concerns that he was not receiving responses to his inmate requests.  He reiterates those concerns here. Given these submissions, the Court concludes that a genuine issue of fact exists as to whether the grievance process was rendered unavailable to Murray such that his failure to properly exhaust could be excused.  Thus, the Court declines to grant summary judgment

---

[2]    The DOC's Inmate Grievance System, set forth in DC-ADM 804, specifically provides that "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."  DC-ADM 804 § 1(A)(11)(d), available at: https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last accessed January 27, 2023).

on the basis that Murray failed to exhaust his administrative remedies.  Accordingly, the

Court considers the merits of the claim below.

### B.   Statute of Limitations

Defendants next assert that, assuming, *arguendo*, that Murray's claims have been

properly exhausted, any claims arising prior to February 2019 are barred by the statute of

limitations.  (Doc. 50, pp.18-19).

A claim brought pursuant to 42 U.S.C. § 1983 is subject to the same statute of

limitations that applies to personal injury tort claims in the state in which such a claim arises.

*See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir.

2009).  Murray's claims arose in Pennsylvania; thus, the applicable statute of limitations is

Pennsylvania's two-year statute of limitations for personal injury actions.  42 PA. CONS.

STAT. ANN. § 5524(2).  The statute of limitations period accrues when the plaintiff knows or

has reason to know of the injury which is the basis of the § 1983 action.  *See Garvin v. City

of Phila.*, 354 F.3d 215 (3d Cir. 2003); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919

(3d Cir. 1991).

The allegations of the complaint pertain to certain incidents that admittedly occurred

several years ago.  (Doc. 1).  Murray sets forth allegations pertaining to various events from

March 2017 through July 21, 2020.  (*Id.* ¶¶ 21-27, 61).  Murray did not file his complaint until

February 27, 2021.  Because the conduct giving rise to certain claims took place prior to

February 2019, the earliest possible date on which any allegation in the complaint could be

deemed timely, these claims are barred by the two-year statute of limitations applicable to §

1983 actions.

Even had the action been timely commenced, Defendants would be entitled to

summary judgment on the merits for the reasons set forth below.

### C.    Official Capacity Claims

Defendants assert that the claims against them in their official capacities fail because

they are not "persons" under section 1983.  (Doc. 50, pp. 19-20).  Personal capacity suits

under section 1983 seek to recover money from a government official, as an individual, for

acts performed under color of state law.  *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir.

1988).  Official capacity suits, in contrast, generally represent an action against an entity of

which the government official is an agent.  *Id.*; *see also Monell v. Dep't of Social Servs.*, 436

U.S. 658, 690 n. 55 (1978).  When suits are brought against state officials in their official

capacities, those lawsuits are treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21,

25 (1991).  However, the doctrine of sovereign immunity, established by the Eleventh

Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by

citizens.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117 (1984);

*Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Lavia v. Pennsylvania*, 224 F.3d 190,

195-96 (3d Cir. 2000).  That immunity runs to state officials if they are sued in their official

capacity and the state is the real party upon which liability is sought.  *Scheuer v. Rhodes*,

416 U.S. 232, 237-38 (1974).  Congress has not abrogated the immunity regarding Murray's

claims, nor has Pennsylvania waived this grant of immunity.  *See* 42 PA. C.S.A. § 8521(b).

Thus, Murray's section 1983 claim against the Defendants in their official capacities is

barred by sovereign immunity.  *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254

(3d Cir. 2010).  Defendants are entitled to summary judgment on this claim.

### D.    Lack of Personal Involvement of Ransom, Bohinski, & Goyne

Murray names Superintendent Ransom, Major Bohinski, and Corrections

Classification Program Manager Goyne, in their supervisory positions.  He asserts that

Defendant Ransom "provided a means or opportunity for McCoy to issue a retaliatory false

misconduct report against Plaintiff."  (Doc. 1 ¶ 92).  He further alleges that Defendants

Bohinski and Goyne were members of the Program Review Committee.  (*Id.* ¶ 56).

Section 1983 of Title 42 of the United States Code offers private citizens a cause of

action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95

F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the

violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *Id.* at 1207.

Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). With respect to supervisory liability, there are two theories: "one under which

supervisors can be liable if they established and maintained a policy, practice or custom

which directly caused the constitutional harm, and another under which they can be liable if

they participated in violating plaintiff's rights, directed others to violate them, or, as the

persons in charge, had knowledge of and acquiesced in their subordinates' violations."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration

marks omitted).  Murray failed to set forth such claims, and liability cannot be imposed on

Defendants Ransom, Bohinski, and Goyne based on their positions and duties as

supervisors.  Accordingly, insofar as Murray's claims against Defendants Ransom, Bohinski,

and Goyne rely on a *respondeat superior* theory of liability, they are entitled to judgment as

a matter of law.

Additionally, any attempt to hold Defendants Ransom and Bohinski liable based on

their involvement in the grievance procedure also fails.  (Doc. 1 ¶ 57; Doc. 49-16,

Deposition of Bray J. Murray ("Murray Dep."), Notes of Transcript ("N.T.") 27:17-20, 28:13-

25, 29:1-11, 39:12-20).  It is well-established that the "failure of a prison official to provide a

favorable response to an inmate grievance is not a federal constitutional violation."

*Flanagan v. Shively*, 783 F.Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir.

1992). *cert denied*, 510 U.S. 829 (1993).  Thus, any claims against Defendants Ransom

and Bohinski that are premised on their responses to a grievance, or lack of a response, fail

because dissatisfaction with a response to an inmate's grievance does not support a

constitutional claim.  *See Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding

16

that allegations that prison officials responded inappropriately to an inmate's later-filed

grievances do not establish the involvement of those officials and administrators in the

underlying constitutional deprivation); *Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir.

2005) (concluding that involvement in the post-incident grievance process is not a basis for

liability).

For all the foregoing reasons, Defendants' motion for summary judgment will be

granted based on a lack of personal involvement of Ransom, Bohinski, and Goyne.

### E.    Retaliation Claim

Murray asserts that Defendants retaliated against him for filing inmate grievances

and civil lawsuits.  The First Amendment offers protection for a wide variety of expressive

activities.  *See* U.S. CONST. amend I.  These rights are lessened, but not extinguished in

the prison context, where legitimate penological interests must be considered in assessing

the constitutionality of official conduct.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

Retaliation for expressive activities can infringe upon an individual's rights under the First

Amendment.  *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim, Murray bears the burden of demonstrating three

elements.  First, he must prove that he was engaged in a constitutionally protected activity.

*See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, he must demonstrate that

he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah*, 229

F.3d at 225).  This requirement is satisfied by showing adverse action "sufficient 'to deter a

person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Significantly, the effect of the adverse action must be more than *de minimis*. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Third, he is required to show that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take action against him. *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

First, Murray does not aver, and there is no evidence, that he filed any grievances or lawsuits against Defendants Ransom, Sergeant Robert McCoy, Bohinski, or Goyne. Murray implies that the purported retaliation of Defendants Ransom, Sergeant Robert McCoy, Bohinski, and Goyne is based on the protected conduct that prompted Defendants Colleen McCoy, Cooper, Gilroy, Lukashenski, and McKeown, to retaliate against him. Courts have consistently rejected retaliation claims "against one defendant based on [protected activity]

against another [individual]" for lack of retaliatory motive. *Victor v. Lawler*, 2010 WL

5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *see also*

*Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no

apparent reason why [the moving defendants] would want to retaliate against Plaintiff for

filing a lawsuit against others."); *Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009)

(affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated

against by a defendant who was not the target of his protected activity).  Murray fails to

clear the first *Rauser* hurdle in that he has not established that he was engaged in

constitutionally protected activity at the time of the alleged retaliatory conduct of Defendants

Ransom, Sergeant Robert McCoy, Bohinski, and Goyne.  These Defendants are entitled to

an entry of summary judgment on the retaliation claim.

Next, Murray avers that Defendants Colleen McCoy, Cooper, Gilroy, Lukashenski,

and McKeown issued misconducts against him, denied him special diet meals, and denied

him the opportunity to present witnesses at a misconduct hearing, in retaliation for filing

grievances and lawsuits.  It is undisputed that the filing of an inmate grievance or civil

lawsuit constitutes a constitutionally protect activity.  (*See* Doc. 50, p. 25; *see also Fantone*

*v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015) ("The filing of a prison grievance is an activity

protected by the First Amendment.")).  Murray has thus satisfied the first *Rauser* prong.

Therefore, the Court must consider whether Murray has established that he suffered an

adverse action sufficient to deter a person of ordinary firmness from exercising his

constitutional rights.  *See Rauser*, 241 F.3d at 333.

Murray asserts that Defendants Colleen McCoy, Cooper, Gilroy, and Lukashenski

issued false misconducts against him in retaliation for filing grievances and lawsuits.  This

resulted in his placement in disciplinary confinement and loss of his prison job.  The

issuance of a misconduct report constitutes adverse action as it carries with it more than *de

minimis* consequences.  *See Watson*, 834 F.3d at 417, 422; *Mitchell v. Horn*, 318 F.3d 523,

530 (3d Cir. 2003) ("[plaintiff]'s allegation that he was falsely charged with misconduct in

retaliation for filing complaints against [a corrections officer] implicates conduct protected by

the First Amendment"); *see also Allah*, 229 F.3d at 225 (transfer to administrative custody

constitutes adverse action).  The Court must next determine whether there is a causal

connection between the exercise of the constitutional right and the adverse action.

Murray alleges that Defendant Colleen McCoy issued the following misconducts

against him: D123755 (filed on August 8, 2019), B972392 (filed on August 30, 2019),

D123772 (filed on September 4, 2019), and D246269 (filed on March 21, 2020).  He avers

that the misconducts were issued against him in retaliation for filing the following

grievances: 809441 (filed on June 28, 2019), 811782 (filed on July 14, 2019), 812432 (filed

on July 15, 2019), 819774 (filed on August 20, 2019), 821833 (filed on September 3, 2019),

827627 (filed on September 3, 2019), 821799 (filed on September 4, 2019), and 824076

(filed on September 16, 2019).  First, Defendant Colleen McCoy issued misconduct

D123755 on August 8, 2019, approximately twenty-four days after Murray filed grievance

number 812432 on July 15, 2019.  Due to this passage of time, Murray has not established

an "unusually suggestive" temporal proximity between his protected conduct and the

Defendant McCoy's adverse action.  *See Williams v. Phila. Housing Authority Police Dept.*,

380 F.3d 751, 760 (3d Cir. 2004).  Second, Defendant Colleen McCoy issued misconduct

B972392 on August 30, 2019, approximately ten days after Murray filed grievance number

819774 on August 20, 2019.  The Third Circuit Court of Appeals has suggested that a

temporal proximity of two days is sufficient to establish causation, *see Farrell v. Planters

Lifesavers Co.,* 206 F.3d 271, 279 & n. 5 (3d Cir. 2000), whereas a temporal proximity of ten

days is sufficient to establish causation only when accompanied by other evidence of

wrongdoing, *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003).

Here, Murray has not set forth evidence of other wrongdoing with respect to this claim.

Third, Defendant Colleen McCoy issued misconduct D246269 on March 21, 2020,

approximately six months after Murray filed grievance number 824076 on September 16,

2019.  Murray has not established an "unusually suggestive" temporal proximity between his

protected conduct and Defendant Colleen McCoy's adverse action to support an inference

of retaliatory motive.  *See Williams*, 380 F.3d at 760.  Lastly, misconduct D123772 was filed

on September 4, 2019, and grievance numbers 821833 and 821799 were filed on

September 3, 2019 and September 4, 2019, respectively.  However, upon review of

grievance numbers 821833 and 821799, Defendant Colleen McCoy is not named in these

grievances. (*See* Docs. 49-6, 49-8).  As set forth above, courts have routinely held that retaliation claims against one defendant, based on the protected activity against another individual, fail for lack of retaliatory motive.  There is no reason that Defendant Colleen McCoy would issue a retaliatory misconduct against Murray based on his filing of grievances against other staff members.  Murray failed to satisfy the third *Rauser* prong and has thus failed to make out a prima facie case of retaliation against Defendant Colleen McCoy.

With respect to Defendant Cooper, Murray alleges that he issued misconduct number B274397 on August 7, 2019, and misconduct number B972392 on August 30, 2019), in retaliation for Murray filing grievance number 812432 on July 15, 2019, and grievance number 972392, purportedly filed on September 16, 2019.  Murray has not established an "unusually suggestive" temporal proximity between his protected conduct and Defendant Cooper's adverse actions.  Defendant Cooper issued Murray misconduct number B274397 on August 7, 2019, approximately twenty-three days after the grievance filed on July 15, 2019.  Defendant Cooper then issued misconduct number B972392 on August 30, 2019, approximately forty-six days after the grievance filed on July 15, 2019.  Moreover, grievance number 972392 was filed on September 16, 2019, *after* the issuances of the misconducts; therefore, this grievance could not have served as basis for Defendant Cooper's alleged retaliation.  Murray failed to satisfy the third *Rauser* prong and has thus failed to make out a prima facie case of retaliation against Defendant Cooper.

22

Murray next asserts that Defendant Gilroy denied him special diet meals on September 3, 2019, in retaliation for filing grievance number 812432 on July 15, 2019, and grievance number 821799 on September 4, 2019 (after the alleged denial of the special diet meals). Defendant Gilroy could not have retaliated against Murray based on the grievance filed on September 4, 2019 because the grievance was filed *after* Murray was purportedly denied his special diet meals. Furthermore, Murray has not established an "unusually suggestive" temporal proximity between his protected conduct and Defendant Gilroy's adverse action to support an inference of retaliatory motive because Defendant Gilroy allegedly denied Murray his special diet meals on September 3, 2019, almost two months after the grievance filed on July 15, 2019. *See Williams*, 380 F.3d at 760. Once again, Murray failed to satisfy the third *Rauser* prong and failed to make out a prima facie case of retaliation against Defendant Gilroy.

Regarding Defendant Lukashenski, Murray alleges that he scheduled Colleen McCoy to work on I-Block on March 21, 2020, and approved inmate misconduct reports for misconducts B274397 (filed on August 7, 2019), and D123755 (filed on August 8, 2019), in retaliation for Murray's filing of grievance number 821833 on September 3, 2019, and grievance number 821799 on September 4, 2019. It is clear that Defendant Lukashenski could not have retaliated against Murray for approving the August 7, 2019 and August 8, 2019 misconduct reports because the grievances were filed one month after the misconducts. Additionally, Murray has not established an "unusually suggestive" temporal

proximity between his protected conduct and Defendant Lukashenski's adverse action to support an inference of retaliatory motive because Defendant Lukashenski allegedly scheduled McCoy to work on I-Block on March 21, 2020, more than six months after the grievances were filed on September 3, 2019 and September 4, 2019. *See Williams*, 380 F.3d at 760. Because Murray failed to satisfy the third *Rauser* prong, he has failed to make out a prima facie case of retaliation against Defendant Lukashenski.

### F.    Due Process Claim

Murray claims that Defendants violated his Fourteenth Amendment right to due process when they issued allegedly false misconduct charges against him, which resulted in his placement in disciplinary custody and loss of his prison job. Murray alleges that his due process rights were violated further by Defendant McKeown's refusal to allow him to call witnesses in person at a disciplinary proceeding. These claims are without merit.

Initially, the filing of a misconduct, even if later proven to be false, "is not a constitutional violation so long as the inmate is provided with due process." *Flanagan*, 783 F.Supp. at 931. In this case, the evidence confirms that Murray was properly notified of the charges associated with the misconduct, was afforded a hearing regarding the misconduct, and the hearing examiner interviewed the inmate witness in camera. (Doc. 49-17, p. 6, Misconduct Report; Doc. 49-17, pp. 7-12, Disciplinary Hearing Report; Doc. 49-17, p. 13, Waiver of Disciplinary Proceedings; Doc. 49-17, p. 15, Inmate Version; Doc. 49-17, p. 14, Inmate Request for Witnesses; Doc. 49-16, Murray Dep., N.T. 53:1-25, 54:1-21). Thus,

Murray was provided with all due process to which he was entitled. As a result, Murray's claims that Defendants wrote false misconduct reports against him are not cognizable under the Fourteenth Amendment.

As to Murray's complaints regarding the time he spent in disciplinary custody and the loss of his prison job, "[d]ue process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin*, 112 F.3d at 706 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486). Murray's placement in disciplinary confinement for ninety days does not establish an atypical or significant hardship sufficient to trigger due process protection. *See Griffin*, 112 F.3d at 708 (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)); *see also Williams v. Armstrong*, 566 F. App'x 106, 108 (3d Cir. 2014) (*per curiam*) (prisoner failed to allege liberty interest based on four-month placement in the RHU). Nor does the loss of his prison job constitute an atypical and significant hardship. *See James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir.), *cert. denied*, 493 U.S. 870 (1989) (an inmate has no liberty or property

25

interest in a particular prison job, or any prison job); *Presbury v. Wenerowicz*, 472 F. App'x

100 (3d Cir. 2012) ("there is no liberty interest in a prison job arising from the Due Process

Clause … [and] the alleged [loss of a prison job] does not impose 'atypical and significant

hardship … in relation to the ordinary incidents of prison life'") (citation omitted).  Thus, the

fact that Murray was found guilty of allegedly false misconducts and sanctioned to minimal

terms of disciplinary custody and loss of his prison job does not implicate a violation of a

constitutional liberty interest under the Fourteenth Amendment.  Moreover, Defendant

McKeown's refusal to allow Murray's witnesses to testify in person at his misconduct

hearing did not violate his due process rights, since Murray did not have a liberty interest to

protect.  Accordingly, Defendants are entitled to summary judgment on the Fourteenth

Amendment due process claims.

      **G.**    **Conspiracy Claim**

      In order to demonstrate a conspiracy, "a plaintiff must show that two or more

conspirators reached an agreement to deprive him or her of a constitutional right 'under

color of law.'"  *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993)

(quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other

grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400

(3d Cir. 2003).  "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not

suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make

averments of communication, consultation, cooperation, or command from which such an

agreement can be inferred." *Flanagan*, 783 F.Supp. at 928.  The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.*

Murray concluded that the Defendants have conspired to violate his rights, yet he has failed to evidence any facts showing an agreement or plan formulated and executed by the Defendants to achieve this conspiracy.  (*See* Doc. 1).  Murray cannot rely on unsupported claims of conspiracy.  For example, in a conclusory fashion, the complaint states that, "[b]ased upon the facts and chronology of events related to the conduct of Defendants McCoy, Ransom, Bohinski, Goyne, Miller . . . including their false reports and narrative created from those false reports, there is a *plausible* inference that they had acted in collusion to have Plaintiff placed in punitive AC-status awaiting transfer to a DOC facility." (Doc. 1 ¶ 110 (emphasis added); *see also* Doc. 1 ¶¶ 84, 87, 92, 93, 112).  Without a factual showing which gives some substance to this conspiracy claim, Murray's claim amounts to nothing more than mere conjecture and bare speculation.  The law is clear that bare allegations of wrongdoing by a defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim.  *See Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding that conspiracy claims which are based upon a *pro se* plaintiff's subjective suspicions and unsupported speculation are properly dismissed under § 1915(d)).  Murray, as the adverse party, must raise "more than a mere scintilla of

evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). Absent any evidence which would reveal the existence of an agreement designed to deny the constitutional rights of Murray, he cannot maintain his conspiracy claim. *See Hodge v. United States*, 2009 WL 2843332, *11 (M.D. Pa. 2009) (dismissing plaintiff's "broad" conspiracy claim because "he does not aver facts sufficient to establish an agreement between the individual defendants to deprive plaintiff of his rights or from which such an agreement could reasonably be inferred"). Because Murray fails to meet his burden, summary judgment is appropriate and will be granted against Murray and in favor of Defendants on this conspiracy claim.

###    H.    Conspiracy Claim under Sections 1985(3) and 1986

Murray also asserts that Defendants conspired to violate his rights in violation of 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986. (Doc. 1 ¶ 1).

To prevail under § 1985(3), a plaintiff must prove the following elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). As stated *supra*, the various conspiracies identified by

Murray are conclusory and speculative in nature and lack the requisite specificity.  His

conclusory assertions do not form the basis for a claim based on a violation of § 1985.

First, Murray has failed to satisfy the identifiable class requirement of § 1985.

Second, "[a] conspiracy claim based upon Section 1985(3) requires a clear showing of

invidious, purposeful and intentional discrimination between classes or individuals."

*Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972).  Murray has failed to establish any

purposeful and intentional discrimination between classes.  Further, even if Murray has

alleged a violation of a right recognized under § 1985, he fails to establish any conspiratorial

agreement actionable under § 1985(3).  Mere conclusory allegations of deprivations of

constitutional rights under § 1985(3) are insufficient to state a claim under § 1985(3).  *See*

*Robinson*, 462 F.2d at 113; *Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 944, 948-

49 (3d Cir. 2019) (nonprecedential).  Murray has failed to set forth any evidence showing

that a conspiracy existed.  Thus, his claim under § 1985(3) must fail.

Murray also brings a claim under 42 U.S.C. § 1986.  (Doc. 1 ¶ 1).  Section 1986 is a

companion to § 1985(3).  In order to state a claim under § 1986, a plaintiff must allege that:

"(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the

power to prevent or aid in preventing the commission of a § 1985 violation, (3) the

defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was

committed."  *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994).  Therefore, if a plaintiff

does not set forth a cause of action under § 1985, his claim under § 1986 necessarily fails

as well, because "transgressions of § 1986 by definition depend on a preexisting violation of § 1985." *Rogin v. Bensalem Tp.*, 616 F.2d 680, 696 (3d Cir. 1980).  Because Murray cannot proceed with a claim under § 1985(3), his claim under § 1986 necessarily fails.  *See id.*  Moreover, even if Murray had valid claims under § 1985, certain claims under § 1986 must fail because they were filed beyond the statute of limitations for § 1986 actions. Section 1986 provides its own statute of limitations, which states that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."  42 U.S.C. § 1986.  Therefore, any claim under § 1986 arising from events that occurred before February 2020 is barred by the one-year statute of limitations.  Defendants are entitled to judgment on the § 1986 claim.

IV.   **Conclusion**

For all the foregoing reasons, the Court will grant Defendants' motion (Doc. 48) and enter judgment in their favor.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: February 28, 2023